```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| MARY ORME-ELLIS, on behalf of THE ESTATE OF TANYA KIMBERLY ORME, deceased, MARY ORME-ELLIS, individually, JOHN ORME, individually,<br><br>    Plaintiffs,<br><br>    v.<br><br>ESTATE OF GARDNER HARRISON STUBEE by MARY PALYS and STEWART STUBEE, CO-EXECUTORS for THE ESTATE,<br><br>    Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>CIVIL NO. 10-0543 (JBS/AMD)<br><br>**OPINION** |

APPEARANCES:

Thomas J. Vesper, Esq.
WESTMORELAND, VESPER, SCHWARTZ, P.C.
8025 Black Horse Pike
Suite 500
West Atlantic City, NJ 08232
    Attorney for Plaintiffs

Barbara J. Davis, Esq.
MARSHALL, DENNEYHEY, WARNER, COLEMAND & GOGGIN
Woodland Falls Corporate Park
200 Lake Drive East,
Suite 300
Cherry Hill, NJ 08002
    Attorney for Defendant

**SIMANDLE**, District Judge:

**I.   INTRODUCTION**

　　This matter comes before the Court on Defendant's motion for partial summary judgment seeking dismissal of certain claims arising under Florida law with respect to a Florida decedent in a fatal New Jersey motor vehicle accident.  [Docket Item 8.]  For

the reasons explained below, the Court grants Defendant's motion for partial summary judgment because New Jersey law does not allow recovery for the kind of damages sought by the Plaintffs.

## II. BACKGROUND

This case arises from a tragic automobile accident. On June 21, 2009 at about 11:15 p.m., Tanya Kimberly Orme was riding in a 1995 Porsche, driven by Gardner Harrison Stubee, on Silver Run Road in Millville, New Jersey. Plaintiffs allege that Mr. Stubee attempted to pass a line of vehicles and lost control, causing the car to crash. Both Ms. Orme and Mr. Stubee died in the crash.

Mary Orme-Ellis, the Executrix of Tanya Orme's estate, brought suit in this Court, based on diversity jurisdiction, against the estate of Gardener Stubee, claiming damages under the New Jersey Survivor Act and Wrongful Death Act.[1] Ms. Orme's parents, Mary Orme-Ellis and John Orme, also sued individually, both pursuing survivor claims under the Florida law.[2]

Diversity of citizenship of the parties is apparent.[3] Ms.

---

[1] Specifically, Plaintiffs allege claims for negligence (Count I), wrongful death (Count II), survivorship, (Count III), and punitive damages (Count IV). (Compl. 3-7.)

[2] Their claims for sorrow and grief under Florida statute constitute Count V and Count VI of the Complaint. (Compl. 7-10.)

[3] Additionally, the amount of controversy of the case is well over the statutory threshold amount of $75,000.

Orme, the decedent, had come from Florida to attend school in New Jersey, but appears to have remained a Florida citizen. Her parents, the individual plaintiffs, are also both citizens of Florida. Mr. Stubee was a New Jersey resident. He is survived by his parents, Mary Palys and Stewart Stubee, and both represent his estate as co-executors in New Jersey.

On July 8, 2010, Defendant filed this motion for partial summary judgment. Defendant seeks summary judgment against Plaintiffs' wrongful death claims under the Florida law (Count V and Count VI of Complaint).

**III. STANDARD OF REVIEW**

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of

fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

To decide the issues before it, the Court must make determinations about which state's law should apply. The facts relevant to this legal question, such as the citizenship of the parties and the location of the accident, are not in dispute.

**IV. DISCUSSION**

    **A.  Choice of Law**

A federal court sitting in diversity must apply the choice of law rules of the forum state -- in this case, New Jersey. Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). Having rejected the strict lex loci delicti rule for tort cases, New Jersey applies the more flexible government-interest approach to choice of law questions. Id. at 500; Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006). This analysis seeks "to determine which state has the greatest interest in governing the specific issue that arises in the underlying litigation." Erny v. Estate of Merola, 792 A.2d 1208, 1212-13 (N.J. 2002). There is a presumption that the law of the situs state applies. This presumption can be overcome, however, "when another state has

more significant interest and the policies of the situs state will not be frustrated by the application of foreign law." Lebegern, 471 F.3d at 428 (citing Erny).  In the end, New Jersey choice of law rules state that the Court must apply the law of the state with the greatest policy interest in the litigation. Fu v. Fu, 733 A.2d 1133, 1139 (N.J. 1999).

Lebegern provides an analytical framework for the determination of the choice of law.  Under this framework, the government-interest test is essentially a two-prong test.  The first prong is to see whether there is actual conflict between the laws of the states.  If there is no conflict, the court applies the law of the forum state, and it is the end of the inquiry.  Lebegern, 471 F.3d at 428 (internal citation omitted).

If a conflict exists (the second prong), the court must assess the interests each state has in applying its own law and determine which state has the most significant relationship to the parties and the event.  Fu, 733 A.2d at 1138.  The Lebegern court lists four factors as the most relevant to the government-interest test in cases based on tort: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, place of business of the parties, and (4) the place where the relationship, if any, between the parties is centered.  Lebegern, 471 F.3d at 429 (citing Fu, 733 A.2d at

1142).

Under this formulation, the choice of law analysis in New Jersey is to determine which state has greater interest, and it "involves looking at each state's contacts to the litigation and assessing the policies behind each state's law." Id. at 431 (citing Erny, 792 A.2d at 1216).

Upon analysis of the relevant statutes of both states and consideration of the arguments of both parties, the Court finds that an actual conflict exists between the wrongful death statutes of Florida and New Jersey, and that New Jersey law should apply to this case because New Jersey has a more significant relationship with the litigation.

>   **B.  Analysis of actual conflict between the wrongful death acts of the two states**

The choice of law issue arises in this case because the statutes of New Jersey and Florida substantially differ in the prescribed recovery from the wrongful death. The difference in prescribed damages as provided by the different states has been recognized as a conflict of law.

In New Jersey, the damages of wrongful death (the losses to the survivors of a decedent) is limited to "the pecuniary injuries from such death, together with the hospital, medical and funeral expenses incurred for the deceased." N.J. Stat. Ann. § 2A:31-5. On the other hand, the Florida law recognizes more extensive damages. For example, each survivor may recover the

value of (1) lost support and services from the date of the decedent's injury to his or her death and (2) future loss of support and services from the date of death. Fla. Stat. Ann. § 768.21(1). The statute also allows recovery by the decedent's parents for "mental pain and suffering" from the date of injury. Fla. Stat. Ann. § 768.21(4).

In Lebegern, the Third Circuit discussed the choice of law issue involving the difference in recoverable damages prescribed by New Jersey's and Pennsylvania's survival acts. Specifically, the Survival Act of New Jersey does not provide for recovery of future economic loss of the decedent, while the Pennsylvania statute does. The court concluded that this difference in permissible damages recoverable in a wrongful death action constitutes a conflict under choice-of-law analysis. Lebegern, 471 F.3d at 431. See also Kase v. Seaview Resort & Spa, 599 F. Supp. 2d 547, 552 (D.N.J. 2009)

Similarly, the recoverable damages permitted under the Florida Wrongful Death Act substantially differs from what may be claimed under New Jersey law. The more expansive wrongful death damages in the Florida statute favor the Florida Plaintiffs, while the more restrictive wrongful death damages in the New Jersey statute favor the New Jersey Defendant. Therefore, the Court concludes that an actual conflict of law exists in the case and proceeds to the second prong of the government-interest test.

Because this case is based on tort, the Court will first assess which state has more relevant contacts to this litigation, then assess the significance of each state's relationship with the litigation by evaluating the various interests cited in Lebegern.

### C. Analysis of relevant contacts of the states to the litigation

The Court first notes that both parties seem to have stipulated that Ms. Orme has no other survivors than her parents.[4] Otherwise, Ms. Orme's parents cannot recover the claimed damages for grief and sorrow because the Florida statute permits recovery of such damages by parents of "adult child" only when "there are no other survivors."[5]

In the briefs submitted to the Court, both parties agree that the New Jersey choice of law rules apply here, and both cite the same four relevant factors in cases based on tort as

---

[4] The Complaint mentions another name, Samantha Orme, as an individual claimant in Count V. (Compl. Count V. ¶1.)  However, the Complaint does not inform the Court of her relationship with the deceased, and it does not mention her anywhere else.  The Court assumes that the name was inadvertently left in the Complaint as a result of editing error and will disregard it for the purpose of deciding this motion, as Samantha Orme is not a listed Plaintiff.

[5] "Each parent of a deceased minor child may also recover for mental pain and suffering from the date of injury. Each parent of a deceased adult child may also recover for mental pain and suffering if there are no other survivors."  Fla. Stat. Ann. § 768.21(4).

articulated in Lebegern. The parties, however, differ in the analysis of the first factor, the place where the injury occurred.

Plaintiff asserts that Florida has more relevant contacts to the litigation because the injury of the parents' grief and sorrow occurred in Florida to Ms. Orme's parents "upon learning of their daughter's death while they were living in Florida." (Pl. Br. 3.) On the other hand, Defendant argues for the application of New Jersey law, pointing out that New Jersey was the place where both the accident and the fatal injury to Ms. Orme occurred. (Def. Reply Br. 2-3.)

Ms. Orme's parents have undoubtedly suffered mental anguish and sorrow upon learning of their child's death. The relevant question before the Court is where that injury occurred under the Florida statute: where it originated (the site of the accident) or where it is felt by the parent who suffers it. Plaintiff argues that the injury in this analysis should be understood to have occurred in Florida, analogizing the parents' injury to a gunshot wound inflicted on a resident of a state from a gun fired across the state line by a resident of another state.

The statute is silent on this question, but it does speak to an analogous issue that informs the Court's interpretation; when the injury is suffered. According to the statute, "the date of injury" referred in Section 768.21 means the date of the

9

decedent's injury, not of the survivors.[6]  Thus, "the date of injury" of Section 768.21(4) is properly read as the date of the accident, not when the parent hears about it and suffers grief. Even though it is conceivable that parents can learn of the loss of their child days later, the Florida statute disregards the time gap between when the decedent suffers fatal injury and when the decedent's parents suffer grief from their child's death and provides recovery for loss as of the date of the decedent's injury.  For example, in <u>Nationwide Mut. Fire Ins. Co. v. MacDonald</u>, 645 So. 2d 1057 (Fla. Dist. Ct. App. 4th Dist. 1994), the plaintiff parents recovered under Section 768.21(4) from the date of injury of their son's accident even though he died of his injuries more than two years after the accident.  In the absence of a similarly explicit provision in the statute regarding the location of injury, the Court will interpret the statute in light of this apparent preference toward focusing on the time and place of the accident and conclude that the relevant place of injury under the statute is the site of the accident, not the location of the grieving survivors.

Thus, considering the language of the Florida wrongful death

---

[6] Section 768.21(1) states that "[e]ach survivor may recover the value of lost support and services from the date of the decedent's injury to her or his death. . ."  Sections 768.21(2) and 768.21(3) each provide for loss of companionship and protection and for mental pain and suffering "from the date of injury" to spouse and the child(ren) of the decedent.

statutes, Plaintiff's argument that Florida is the place of injury loses force. As Plaintiff concedes, "the place of injury is the dominant factor within New Jersey choice of law procedure." (Pl. Br. 3.) "[W]hen both the place of injury and the conduct causing the injury are the same, the general approach is to apply the law of the jurisdiction where the injury occurred." Lebegern, 471 F.3d at 431. In this case, the Court finds that the alleged tortious conduct and resultant death occurred in New Jersey; the injury that caused the death of Ms. Orme and the mental anguish to her parents occurred in New Jersey; even though the estate of Ms. Orme is administered in Florida, both victims of the fatal accident either domiciled or resided in New Jersey at the time of the accident. Moreover, Ms. Orme's presence in Mr. Stubee's car in New Jersey was not a mere matter of chance; she was living in New Jersey while attending school, and thus she was reasonably subjected to the laws of New Jersey for conduct occurring in this state. The record also reflects that the decedents were driver and passenger in the same vehicle, and some degree of acquaintance is presumed beyond the mere occurrence of this tragic accident. Considering these facts, the analysis of relevant contacts favors the application of New Jersey law. The Court next assesses the policy interests of the two states.

> **D. Consideration of policy interests of each state in applying its law to the litigation**

Having concluded that the analysis of relevant contacts favors the application of New Jersey law, it is necessary to assess the policy interests of the two states that may be affected by the application of New Jersey law to this case.

Florida has an interest in providing full recovery to the plaintiffs in wrongful actions. The Florida Legislature declared, "It is the public policy of the state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. Sections 768.16-768.26 are remedial and shall be liberally construed." Fla. Stat. Ann. § 768.17.

Even though the New Jersey legislature has not expressly declared its legislative intent, New Jersey is presumed to have an interest in applying its wrongful death act in the case. "Inasmuch as [the statute] sets forth the type of damages that may be recovered in a wrongful death action, it reflects the New Jersey Legislature's determination both of what is fair for a plaintiff to recover and a defendant to pay in such a case." Petrella v. Kashlan, 826 F.2d 1340, 1343 (3d Cir. 1987). This principle of Petrella is summarized as "when a statute details the nature and extent of damages recoverable in a wrongful death action, it reflects the legislature's concern for both plaintiffs and defendants." Lebegern, 471 F.3d at 431. The court of Lebegern concluded that "when each state is interested in the

12

application of its laws and the application of the foreign state's law would frustrate the purposes of the forum state, the presumption is to apply the law of the forum." Id. at 433.

By enacting statutes that provide damages recoverable from a wrongful death, each state expressed its policy interests in determining what is fair to the parties of such action. When both states are equally interested in the application of its laws, the application of one state's law will frustrate the purpose of the other to the extent those laws conflict. Petrella provides guidance in such a situation. In a wrongful death action between a Florida plaintiff and New Jersey defendants arising from a medical malpractice tort action, the Petrella court affirmed the application of New Jersey law, finding that "New Jersey's interest in this case is no less than Florida's." Petrella, 826 F.2d 1340, 1343.

Furthermore, "when a person chooses to travel across state lines, he should expect the laws of the place in which he is located to govern his transactions." Lebegern, 471 F.3d at 433. Thus, "the place of injury takes on special significance 'where the place where the injury occurred was not fortuitous.'" Id. (quoting Blakesley v. Wolford, 789 F.2d 236 (3d Cir. 1986)). In the instant case, Ms. Orme traveled to New Jersey to attend school and took up residency in New Jersey, so it cannot be considered accidental that she found herself in a car on a New

13

Jersey road as a passenger.

Since Florida's policy interest, even though significant, is not greater than that of New Jersey, the <u>situs</u> state, New Jersey law presumptively applies here.[7]  Furthermore, New Jersey has more relevant contacts and a more significant relationship to the litigation.  Since the application of the Florida law, under these circumstances, would frustrate the policy interest of New Jersey, the Court concludes that New Jersey has greater government interest in applying its laws to this case.  Therefore, the Court will apply New Jersey's wrongful death statutes to this litigation.  Consequently, the Court will grant partial summary judgment to the Defendant and dismiss Count V and Count VI of the Complaint since Florida law does not apply.[8]

---

[7] A federal district court in New York reached the same conclusion in a case involving the Florida wrongful death statutes, quoting Professor Willis L. M. Reese, the Reporter for the Conflicts of Laws Restatement, that "a person should not be held liable for a greater measure of damages than that provided by the law of the state where he was domiciled, where he acted, and where the injury occurred."  <u>Walkes v. Walkes</u>, 465 F.Supp. 638, 641 (S.D.N.Y. 1979).

[8] Defendant did not raise the issue of standing of the individual Plaintiffs in this motion, but the Court notes that, under the wrongful death acts of both states, only the representative of the decedent's estate may bring action for recovery for all survivors' claims.  <u>See</u> Fla. Stat. Ann. § 768.18(1); <u>Wiggins v. Estate of Wright</u>, 850 So. 2d 444, 447 (Fla. 2003).  <u>See</u> <u>also</u> N.J. Stat. Ann. § 2a:31-2.  The Court is not deciding on this issue because the claims specific to the individual Plaintiffs are dismissed on other grounds.

14

**V.    CONCLUSION**

    For the foregoing reasons, the Court finds that New Jersey's Wrongful Death Act should be applied to the determination of damages in the present case.  Consequently, the Court will grant the Defendant's motion for partial summary judgment and dismiss Counts V and VI of the Complaint.  The accompanying Order will be entered.

**November 22, 2010**　　　　　　　　**s/ Jerome B. Simandle**
Date　　　　　　　　　　　　　　　　JEROME B. SIMANDLE
　　　　　　　　　　　　　　　　　　United States District Judge